The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as:
 STIPULATIONS
1. The parties stipulate to the admission of plaintiffs recorded statement into the record.
2. Plaintiffs average weekly wage is to be determined by a Form 22 Wage Chart which has been submitted into evidence and is marked as Stipulated Exhibit #2.
3. An employment relationship existed between plaintiff-employee and defendant-employer. The North Carolina Industrial Commission has jurisdiction to hear this case and all parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
 *********** RULING ON MOTION
Plaintiffs Motion for Reconsideration is DENIED as the Full Commission does not deem oral argument to be necessary in this case.
 ***********
Based on the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff began working for defendant-employer in October, 1996 as a "plant person in the graphite department and was employed in the same position on May 15, 1997.
2. Plaintiffs job duties required that he perform a number of jobs as assigned according to the needs of the company, including working as a patrolman and loader. Plaintiff primarily worked as a patrolman where he was required to hook up copper links on the front and back of furnaces. No ladder climbing was required. As a loader, plaintiff was required to put carbon inside the furnace and build the furnace up around the carbon. A loader is sometimes required to climb ladders.
3. On May 15, 1997, plaintiff was initially assigned the duty of scraping stock in the cleaning building. Plaintiff was later directed by his supervisor to load furnace number seventy-two.
4. In order to load furnace seventy-two, plaintiff was required to climb a ladder. The floor around furnace seventy-two is cement and uneven. On one side, there is a large drain that goes in the floor. The floor is rough in spots due to tar drippings which "kind of looks like gravel on the floor. On the side of furnace seventy-two, electrodes and copper plates project out from the side.
5. In order to load furnace seventy-two on May 15, 1997, plaintiff placed a ladder in a position where it was leaning from the top of the furnace to the floor at approximately a 45 degree angle. A more shallow than usual angle was needed to clear the structures projecting from the side of the furnace. He used a rope to tie the ladder to a copper plate which projected from the side of the furnace to keep the base of the ladder from slipping. On May 15, 1997, plaintiff was descending the ladder from furnace seventy-two backwards. He could not see behind and below him to determine where he was placing his foot due to the angle of the ladder. Because of the shallow angle of the ladder, the rungs or steps of the ladder, which normally have the flat side upwards, had, instead, an angled edge upwards. In descending the ladder, plaintiff had to balance on the angled edges of the steps. When plaintiff was part of the way down the ladder, he mistakenly placed the front of his left foot rather than the mid section on the angled edge of the rung. When he shifted his weight to his left leg to come down another step, plaintiffs heel unexpectedly dropped and his foot flexed upward at the ankle joint as he tried to catch himself. His left knee popped straight back or hyperextended and plaintiff felt immediate pain in his left knee. Plaintiff was unable to bear weight on the left leg and had to be taken off the shop floor in a golf cart and transported to Grace Hospital where he saw Dr. Scott.
6. On May 15, 1997, x-rays of plaintiffs left knee revealed no joint effusion, fracture, malalignment, or focal bone pathology. Plaintiff was diagnosed with a sprain to the left knee by Dr. Don Scott at Grace Hospital in Morganton and instructed not to return to work until re-checked the following morning.
7. The positioning of the ladder in such an unusual and awkward position increased the risk of injury to plaintiff as he descended the ladder backwards.
8. When plaintiff stepped on the outer edge of a rung of the ladder causing his body weight to shift, his foot to flex backwards and his knee to hyperextend, these events constituted unlooked for, untoward events not designed or expected by plaintiff and thus an accident. Therefore, on May 15, 1997, plaintiff sustained an injury by accident to his knee arising out of and in the course of his employment.
9. On June 13, 1997, plaintiffs MRI results revealed a small Bakers cyst and a left medial meniscus tear.
10. On June 18, 1997, Dr. Myron Smith, III performed a left knee arthroscopy with partial meniscectomy of the posterior horn and chondroplasty of the medial femoral condyle and the patella. Dr. Smith opined and the Full Commission finds that plaintiffs injury by accident caused his torn medial meniscus which required surgical treatment. The type of injury plaintiff sustained does not usually occur from normal walking and climbing.
11. Although not as detailed, plaintiffs prior statements were not inconsistent with his testimony at hearing.
12. On June 27, 1997, plaintiff received aspiration of accumulated fluid on his left knee, as well as a steroid injection to decrease the inflammation and pain.
13. On August 7, 1997, Dr. Smith determined that plaintiff was experiencing no pain or swelling and had regained full range of motion of the knee. Dr. Smith released plaintiff to return to work. As a result of his injury by accident, plaintiff was incapable of earning wages from May 15, 1997 to August 11, 1997 and from August 13, 1997 to August 17, 1997 and has sustained a 10% permanent partial impairment to his left leg.
14. On or about August 18, 1997, plaintiff returned to work for defendant-employer at the same or greater average weekly wage than he was earning at the time of the injury.
15. Plaintiff is likely to need future medical treatment for his knee.
16. Plaintiffs average weekly wage of $561.05 yields a compensation rate of $374.05 based on the Form 22 wage chart.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his left knee arising out of and in the course of his employment on May 15, 1997. N.C. Gen. Stat. 97-2(6).
2. As a result of his compensable injury to his knee, plaintiff was temporarily totally disabled from May 15, 1997 to August 11, 1997 and from August 13, 1997 to August 17, 1997 and is entitled to temporary total disability compensation during said period. Plaintiff is also entitled to permanent partial disability compensation for 20 weeks for the 10% impairment to his left leg resulting from his injury. N.C. Gen. Stat. 97-29 and 97-31.
3. Plaintiff is entitled to all reasonably required past and future medical treatment for his compensable injury which will provide relief, effect a cure or lessen his disability. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability at the rate of $374.05 per week from May 15, 1997 to August 11, 1997 and from August 13, 1997 to August 17, 1997. Defendants shall also pay to plaintiff permanent partial disability compensation at the rate of $374.05 per week for 20 weeks for the 10% rating to his leg. This compensation has accrued and shall be paid in a lump sum, subject to attorney fees.
2. Defendants shall pay for all past and future medical treatment reasonably required as a result of plaintiffs injury when bills are approved according to Industrial Commission procedure.
3. Plaintiffs attorney is awarded an attorneys fee of 25% of the compensation due plaintiff.
4. Defendants shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________ RENE C. RIGGSBEE COMMISSIONER
S/_______________ LAURA K. MAVRETIC COMMISSIONER
BSB:md